IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINWOOD DOTSON, individually and on behalf of all others similarly situated** | : : : : | **CIVIL ACTION NO. 08-3744** |
| **v.** | : : | |
| **PORTFOLIO RECOVERY ASSOCIATES, LLC** | : : | |

OPINION

**Norma L. Shapiro, J.**                                                                                                  **June 3, 2009**

      Plaintiff filed this putative class action for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Plaintiff moved for class certification. The motion will be denied.

**I.    BACKGROUND**

      The complaint alleges plaintiff received a dunning letter concerning his debt "obligations incurred primarily for personal, family or household use" from defendant's "Legal Department." Compl. ¶¶ 6, 12. (paper no. 1). The letter stated that plaintiff's account had "been referred to the Legal Department of Portfolio Recovery Associates, LLC for collection." Compl. ¶ 6. Plaintiff claims, "In sending the collection notice complained of, Portfolio violated the Fair Debt Collection Practice Act [*sic*] by falsely, deceptively or misleadingly creating the impression in the consumer that the collection letter was prepared, reviewed, or sent by a lawyer when it was not. An attorney did not personally author the letter nor have any meaningful involvement in the sending of the letter, nor collection of the debt alleged due from Dotson (and the Class)."

Compl. ¶ 10. Under Federal Rule of Civil Procedure 23, plaintiff moves to certify a proposed class of 4,019 Pennsylvania residents to whom defendant sent substantially identical collection letters.

Defendant, denying liability, argues the letter was not false or misleading. "The letter . . . does not imply attorney involvement in the drafting, review or sending of the letter. Rather, when read as a whole, there can be no false or deceptive implication that an attorney sent the letter. The letter clearly states that it is from a debt collector and that the account may be placed with local counsel for suit." Ans., p. 7 (paper no. 5). Defendant also attacks plaintiff's credibility; it calls particular attention to plaintiff's false testimony about his three prior claims filed in this district under the FDCPA. Each of plaintiff's prior actions was filed by attorney Theodore Lorenz, plaintiff's counsel in this action.

## II.   DISCUSSION

Class certification under Federal Rule of Civil Procedure 23 is committed to the discretion of the district court. <u>Califano v. Yamasaki</u>, 442 U.S. 682, 703 (1979). Rule 23(a) provides four prerequisites for class certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). To certify a class, the court must perform a rigorous analysis of Rule 23(a) requirements and find that all four requirements have been satisfied. <u>Beck v. Maximus, Inc.</u>, 457

F.3d 291, 297 (3d Cir. 2006).  See also In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008) (vacating district court's order of class certification).  "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met.  Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence.  [T]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action."  Id. at 307.  Defendant concedes plaintiff meets the requirements of numerosity, commonality and typicality, but argues plaintiff cannot adequately represent the proposed class.

   A.   **Adequacy**

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.[1]  Adequate representation requires that: (1) plaintiff's counsel be qualified, experienced, and generally able to conduct the proposed litigation; and (2) plaintiff must not have interests antagonistic to those of the class.  New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007).  Defendant concedes plaintiff's counsel is adequate, but contests the adequacy of plaintiff as representative of the putative class.

---

[1] Although distinct requirements under Rule 23(a), the Supreme Court has explained that the analysis of typicality and adequacy are essentially the same when determining whether the plaintiff can properly represent the putative class.  "The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Amchem Prods. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (affirming court of appeals' order vacating class certification and finding named plaintiffs inadequate representatives).

### 1. Unique Defenses

When a defense unique to the claim asserted by the proposed representative plaintiff is likely to predominate at trial, the plaintiff is not an adequate representative of the putative class. The Third Circuit Court of Appeals has held, "To defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial. If a court determines an asserted unique defense has no merit, the defense will not preclude class certification." Beck, 457 F.3d at 300. In Beck, defendant allegedly sent a letter to plaintiff's employer that improperly identified the sender as a collection agency and implied the existence of debt in violation of the FDCPA. Defendant, claiming it had mistaken plaintiff for another woman with the same name and who lived in the same Philadelphia neighborhood, argued the violation was a *bona fide* error not cognizable under the Act. The district court, rejecting the unique defense as not meritorious (*i.e.*, finding the alleged violation was not a *bona fide* error), concluded plaintiff was an adequate representative and granted class certification. Id. at 299. However, the Third Circuit expressed "difficulty discerning the District Court's reasons for concluding [plaintiff] was a typical and adequate class representative." Id. at 297. Aligning itself with other courts of appeals, the Third Circuit articulated the standard:

> A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation. We believe this standard strikes the proper balance between protecting class members from a representative who is not focused on common concerns of the class, and protecting a class representative from a defendant seeking to disqualify the representative based on a speculative defense.

Beck, 457 F.3d at 301. The court vacated class certification and remanded for reconsideration under the proper standard.

4

In this action, two unique defenses are likely to become a major focus at trial: (1) plaintiff's lack of credibility; and (2) whether plaintiff's cognitive disabilities impaired his comprehension of the allegedly deceptive collection letter.

### a.      Credibility

A district court may consider the credibility of the named plaintiff in determining adequacy of representation.  See Savino v. Computer Credit, 164 F.3d 81, 87 (2d Cir. 1998) (denial of class certification affirmed in FDCPA class action because proposed representative plaintiff's "differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial").  Dunning letters under the FDCPA are analyzed under an objective standard from the perspective of the least sophisticated debtor, Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008), but plaintiff's credibility is relevant if he intends to testify at trial that the allegedly deceptive letter failed to meet the objective standard.  Here, plaintiff's credibility is relevant because he is the only witness proposed by his counsel to testify about whether the letter would have deceived the least sophisticated debtor:

> Plaintiff Dotson will present his individual case, which may include calling Linwood Dotson, corporate designee(s) of [defendant] and several employees of [defendant]. . ..  Plaintiff will establish that the least sophisticated consumer could readily get the impression that a lawyer was involved in the individual collection or the decision to send the 'Legal Dept.' letter to them - when such was not the case.  This is the test for deception under Rosenau v. Unifund, 539 F.3d at 220-21.

Pl. Br. at p. 16 (paper no. 15).

At his deposition, plaintiff testified falsely under oath that: (1) prior to receiving the allegedly deceptive letter from defendant, he had never heard of Mr. Lorenz or his law firm; (2)

prior to filing the complaint against Portfolio Recovery Associates, LLC, he had filed only one other civil complaint; and (3) plaintiff did not file civil actions against Glacier Financial Services or Stawiarski & Associates. Dotson Dep., p. 46, 63-65 (Paper no. 16, Ex. E).

In <u>Dotson v. Glacier Financial Services, Inc.</u>, Civil Action No. 06-1579 (E.D. Pa.), plaintiff alleged defendant sent collection letters misstating the amount of outstanding principal in violation of the FDCPA. "The Letters were false, deceptive, misleading and unfair in that they disclosed a fixed sum of $2324.65 as 'principal.' Yet, the stated principal is not all principal but includes a significant portion of accrued interest. The 'principal' is overstated." Compl., <u>Dotson v. Glacier Financial Services, Inc.</u>, Civil Action No. 06-1579 (E.D. Pa.) (paper no. 1). The docket indicates summons was issued but not returned as executed; defendant never answered or responded. <u>Id.</u> Two months after filing the complaint, plaintiff moved for voluntary dismissal without prejudice. Civil Action No. 06-1579 (E.D. Pa.) (paper no. 3). Plaintiff took no further action.

In <u>Dotson v. Stawiarski & Assocs.</u>, Civil Action No. 06-4108 (E.D. Pa.), plaintiff alleged defendant sent a collection letter containing language that failed to conform to the statutory notice required under the FDCPA. The letter stated, in relevant part, "the debt will be assumed to be valid," but the statute required notice that "the debt will be assumed to be valid ***by the debt collector***." Compl., <u>Dotson v. Stawiarski & Assocs.</u>, Civil Action No. 06-4108 (E.D. Pa.) (paper no. 1). Plaintiff claimed, "Defendant's statement that the debt 'will be assumed to be valid' implies that someone other than the debt collector, such as a court, will assume the debt valid, which is a false and misleading representation in violation of the FDCPA." <u>Id.</u> at ¶ 13. The action was settled and dismissed with prejudice. Civil Action No. 06-4108 (E.D. Pa.) (paper nos.

4 and 5).

In <u>Dotson v. MRS Associates, Inc.</u>, Civil Action No. 06-615 (E.D. Pa.), plaintiff alleged defendant sent a misleading collection letter threatening wage garnishment in violation of the FDCPA. The court granted plaintiff's motion for class certification, approved a class settlement of $20,000, and awarded $49,000 in attorney's fees to Mr. Lorenz, plaintiff's counsel. Civil Action No. 06-615 (E.D. Pa.) (paper no. 62).

Plaintiff gave false testimony under oath by denying his prior claims under the FDCPA. When called to testify at trial about whether defendant's letter was deceptive, as proposed by plaintiff's counsel, plaintiff will be impeached on cross examination. Because plaintiff is unable to provide credible testimony, he cannot adequately protect the interests of absent members of the proposed class.

### b.    Cognitive Impairment

The Third Circuit Court of Appeals has held the least sophisticated debtor standard is a "low" standard, but "it prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." <u>Rosenau</u>, 539 F.3d at 221 (citation omitted). Plaintiff's proposed trial plan lists himself as the only debtor to testify about the letter. Pl. Br. at p. 16 (paper no. 15). However, plaintiff admittedly suffers from cognitive impairments which might render his comprehension of the letter atypical from other members of the proposed class or, for that matter, the least sophisticated debtor. Plaintiff testified that he suffers from memory loss:

> Q.    What is it about your disabilities that would make you forget something like filing a lawsuit?

> A. PDST, post traumatic stress, I forget a lot of things. I can't remember faces, peoples names, things of that nature. I think about it but I can't recall.

Dotson Dep., p. 73 (Paper no. 16, Ex. E).

At trial, defendant will likely argue that plaintiff's disability impaired his capacity to understand the nature and substance of the dunning letter. Defendant will likely introduce plaintiff's three prior claims under the FDCPA as circumstantial evidence of plaintiff's inability to comprehend consumer correspondence. Because plaintiff is the only witness proposed to testify about the alleged deception and plaintiff's cognitive impairment is relevant to whether he was deceived, the issue is likely to become a major focus of litigation. Plaintiff's representation of the class would prejudice the interests of absent class members who do not suffer from the same cognitive impairment.

### 2. Plaintiff's Lack of Involvement

To satisfy the requirement of adequate representation, a class representative must have at least minimal knowledge about the case so he can make informed decisions regarding the litigation. "[C]ourts have denied certification where the representative appeared unaware of even the most material aspects of his case, not knowing why particular defendants are being sued, and having no conception of the class of persons that he purportedly represents." Allen v. Holiday Universal, 249 F.R.D. 166, 184 (E.D. Pa. 2008) (J. Pratter) (adequacy requirement satisfied because class representative had reviewed and verified the complaint, participated in responses to interrogatories, document requests, and requests for admission, and demonstrated awareness of the theory of the case). See also Rand v. Monsanto Corp., 926 F.2d 596, 599 (7th Cir. 1991) ("Although a representative plaintiff need not immerse [herself] in the case, the named plaintiff

must have some commitment to the case, so that the 'representative' in a class action is not a fictive concept."); Smyth v. Carter, 168 F.R.D. 28, 33 (W.D. Va. 1996) (A class representative "must be able, at a minimum, to make important nondelegable decisions about the course of the litigation . . . ."); Kaplan v. Pomerantz, 131 F.R.D. 118, 121 (N.D. Ill. 1990) ("A plaintiff whose knowledge is so wanting that [he] appears to be no more than a pawn of attorneys who seek a large fee award may be an inadequate class representative.").

Plaintiff's deposition testimony demonstrates a lack of involvement or understanding of the claims asserted on his behalf by his attorney.  Plaintiff's receipt of the allegedly deceptive letter forms the basis of this action.  Upon receipt, plaintiff did not contact defendant to request clarification of the alleged misrepresentation. Dotson Dep., p. 33 (Paper no. 16, Ex. E) ("Q. Did you contact Portfolio Recovery Associates after you read Exhibit A? A. No, I didn't.").  Instead, plaintiff sent a copy to Pearl Polto, an individual plaintiff had hired to "repair" his credit but admittedly has never met in person.[2]  Id. at 33-34.  Plaintiff could not recall Ms. Polto's first name with certainty and believed she was located in "South Philly somewhere."  Id.  Plaintiff did not discuss the substance of the letter with Ms. Polto,[3] who subsequently sent a copy to Mr.

---

[2]  Plaintiff's testimony suggests Ms. Polto was not deceived by defendant's letter, and it is unclear how this action has helped to "repair" his credit.  It appears from plaintiff's numerous complaints of allegedly deceptive dunning letters that he is pursuing litigation under the FDCPA to avoid obligations to creditors.

[3]  Dotson testified:

Q.  After you had the conversation you described before with Pearl Polto, when you discussed Exhibit A to Dotson-1, did you have any subsequent conversations with her concerning Exhibit A to Dotson-1?
A.  First of all, I never discussed it with her, as far as discussing it goes.  She just told me there was a matter that needed attention, so it wasn't much of a discussion.

Lorenz without plaintiff's knowledge.[4]  Plaintiff assumed, but could not testify with certainty, that Mr. Lorenz obtained the allegedly deceptive letter from Ms. Polto. Id. at 48.  The facts surrounding the inception of this action demonstrates plaintiff's lack of involvement.

### III.  CONCLUSION

Plaintiff's motion for class certification is denied because plaintiff is not an adequate representative of the proposed class.  Plaintiff may proceed on his own claim for relief.  An appropriate order follows.

---

Dotson Dep., p. 49 (Paper no. 16, Ex. E).

[4] Dotson testified:

> Q. Did Pearl Polto tell you she was going to send the letter that's Exhibit A in Dotson-1 to Mr. Lorenz' law firm?
> A. She said she was going to recommend a lawyer, yeah.  She didn't specify who, what or where.  She just told me somebody needed to look into it.
> Q. I understand. Did she tell you that she would communicate with that lawyer on your behalf?
> A. No, she did not.

Dotson Dep., p. 48 (Paper no. 16, Ex. E).